**IN THE COURT OF APPEALS OF IOWA**

No. 15-0794
Filed August 5, 2015

**IN THE INTEREST OF B.E.,**
    **Minor Child,**

**B.E., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Winneshiek County, Alan D. Allbee, Associate Juvenile Judge.

A father appeals from the adjudication and disposition orders in a child-in-need-of-assistance proceeding. **REVERSED.**

Karl Knudson of Knudson Law Office, Decorah, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Andrew Van Der Maaten, County Attorney, and Barrett M. Gipp, Assistant County Attorney, for appellee.

Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for mother.

Whitney L. Schiller of Shafer & Shafer, Waukon, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

The father appeals the adjudication and disposition orders in this child-in-need-of-assistance (CINA) proceeding regarding his child, B.E. The father contends the petition was constitutionally deficient and deprived him of due process as guaranteed by the United States and Iowa Constitutions.

I.

The nature of the father's claim requires an extensive recitation of the procedural posture of this case. The father and the mother divorced in May 2014. Three children were born to the marriage. The mother was granted physical care of the children, subject to the father having liberal visitation with all three children. It is only B.E.—born in 2005 and the youngest of the three children—who is the subject of this proceeding.

In August 2014, the Iowa Department of Human Services ("IDHS") began a child abuse investigation after receiving information the father caused physical and mental injury to B.E. In September 2014, the State filed an application for temporary removal of B.E. pursuant to Iowa Code section 232.78 (2013) (authorizing ex parte removal of child under certain conditions). In support of the application for removal, the State alleged removal from the father's care was necessary to avoid imminent danger to B.E.'s life or health. Specifically, B.E. had been diagnosed with posttraumatic stress disorder (PTSD), ADHD, oppositional defiant disorder, and enuresis (involuntary urination). A licensed mental-health provider opined the PTSD and enuresis were caused by stress associated with ongoing physical and emotional abuse by B.E.'s father. It was reported B.E. had been physically aggressive toward others, threatened to kill

himself or hurt his father, had nightmares regarding his father hurting him, wetted the bed, refused to sleep alone, and expressed a desire to not affiliate with his father. On September 12, 2014, the juvenile court granted the application for temporary removal.

On September 15, the State filed its CINA petition, alleging B.E. was in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2). This provision defines a child in need of assistance as one "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of . . . [t]he failure of the child's parent . . . to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.2(6)(c)(2). The petition merely quotes the statutory language without identifying any conduct at issue. The exhibit filed with and in support of the petition does not identify any acts or omissions relating to the father's failure to supervise the child. Instead, the exhibit sets forth B.E.'s mental-health conditions and behaviors and an opinion from a mental-health professional that the conditions were caused by the father's abuse. The mental-health professional's opinion was based on history provided by the mother and obtained in several sessions with B.E. As will be discussed in more detail below, the mental-health professional did not conduct any independent testing prior to reaching this conclusion and was completely unaware of significant medical-history information.

In September 2014, IDHS concluded its abuse investigation. IDHS concluded the allegations of physical abuse were not confirmed. IDHS founded a child-abuse complaint for mental injury. The father filed an administrative appeal challenging the founded complaint. On May 1, 2015, after the

adjudication and disposition hearings were held and the corresponding orders were filed, IDHS changed its findings in the abuse investigation, concluding the mental injury was not confirmed. The father's administrative appeal challenging the finding was dismissed.

On October 8, 2014, the juvenile court issued its prehearing conference order. The order directed the State to amend the CINA petition to include as an additional ground for adjudication section 232.2(6)(c)(1) (defining CINA as one "[w]ho has suffered or is imminently likely to suffer harmful effects as a result of any . . . [m]ental injury caused by the acts of the child's parent"). The order set forth the adjudicatory issues as section 232.2(6)(c)(1) and (2) and provided a definition of relevant terms. The prehearing conference order did not provide any additional information regarding the acts or omissions at issue. The State filed the amended petition on October 29. The amended petition included only the statutory language without identifying any conduct at issue.

The matter came on for an adjudication hearing in February 2015. Prior to entry of the adjudication order, the father filed a post-hearing motion to dismiss. The father raised several issues in the motion to dismiss. The father challenged the application for temporary removal and CINA petition on due process grounds. Specifically, he contended the CINA petition was never amended to include mental injury; the petition never made reference to any specific acts or omissions alleged to have caused mental injury, thereby depriving him of notice; and the petition did not allege any acts or omissions regarding the failure to supervise, thereby depriving him of notice. The father also contended the State failed to carry its burden of proof at the hearing. Finally, the father contended section

232.2(6)(c)(1) (mental injury) was unconstitutionally vague on its face and as applied to him.

On February 16, 2015, the juvenile court filed its adjudicatory order, concluding the State failed to establish B.E. was in need of assistance pursuant to section 232.2(6)(c)(1) (mental injury). The juvenile court found on July 22, 2009, while under the mother's supervision, B.E. fell from a second story window in his home and landed on his head on a concrete pad. As a result of the fall, the child suffered traumatic brain injury. The parents were advised the brain injury could "effect every area of a child's life, including thinking, behavior, emotions, communication, physical abilities, and personal relationships. . . . Ongoing lifestyle and relationship adjustment may be necessary." The juvenile court continued,

> Sadly, many of the maladies that commonly accompany a traumatic brain injury are present in [B.E.] The attention and behavioral issues shown by [B.E.] . . . preceded any alleged physical or emotional abuse of the child by his father and could just as well been the result of [B.E.'s] fall and resultant brain injury.

The juvenile court discredited the mental-health professional's opinion that the child's behaviors were caused by the father's abuse. The juvenile court noted the mental-health professional had not done any psychological or independent testing of B.E. and based her opinion on the medical history provided by the mother. Significantly, the mother did not inform the professional of B.E.'s traumatic brain injury. The mental-health professional was also unaware the child's bedwetting was genetic, as the father and paternal uncle suffered from the same. The professional was also unaware of when B.E.'s behaviors began and

did not know they began significantly prior to the time of the parents' dissolution of marriage and prior to the allegations of abuse.

The juvenile court did conclude, however, the child was in need of assistance pursuant to section 232.2(6)(c)(2) (failure to supervise). The court noted that visitation between the father and the older children was progressing without any issue. Nonetheless, the juvenile court was troubled by the father's attitude regarding domestic violence and corporal punishment. "The court also found problematic the cavalier manner in which the child's father dismissed any potential harm to the child by taking jumps on his bicycle when not wearing a helmet." Although the court identified certain acts of intimidation, those acts were not identified in the petition and did not support the court's conclusion, "As the court's aid is necessary to improve the child's relationship with his father, the court will intervene and adjudicate the child in need of assistance . . . ."

The father filed a Iowa Rule of Civil Procedure 1.904(2) motion, requesting the district court amend, among other things, certain findings regarding the incident involving B.E. jumping his bicycle off ramps. The father requested the juvenile court modify its earlier ruling and end the temporary removal of the minor child from the custody of the father. The juvenile court denied the motion but then made an additional finding that unsupervised contact with the father would pose an imminent risk to the child. The juvenile court did not address the father's post-trial motion to dismiss.

In April 2015, the matter came before the juvenile court for dispositional hearing pursuant to Iowa Code section 232.99. The juvenile court found the father had sought services for anxiety and depression arising out the parents'

difficult dissolution proceedings. The court found the father and B.E. had begun supervised visitation in a therapeutic setting, although the commencement of the visitation had been significantly delayed since the entry of the adjudicatory order for various reasons not attributable to the father. The juvenile court concluded that it would be in the best interests of B.E. to remain in the custody of his mother under the protective supervision of IDHS and that the father should continue to have visitation with the child in a therapeutic setting subject to the approval of the mental-health professional previously discredited.

The father again filed a rule 1.904(2) motion. The father requested the juvenile court rule on his pending motion to dismiss, arguing the failure of the petition to include any factual allegations regarding the failure to supervise deprived him of fair notice prior to the adjudicatory hearing. The father requested the court amend and enlarge certain findings in the disposition order. The juvenile court denied the motion:

> In the second rule 1.904(2) motion, the child's father *now* raises issues of lack of adequate notice in the application for removal . . . and the CINA petition filed by the State. These issues should have been raised within 15 day[s] of the entry of the adjudication order, but were not, are not timely, and no good cause has been shown to extend the time to make that challenge.

(Emphasis added.) The father timely filed this appeal.

## II.

Both the federal and state constitutions provide no person shall be deprived of life, liberty, or property without due process of law. *See* U.S. Const. amends. V, XIV, § 1; Iowa Const. art. I, § 9. "[F]reedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth

Amendment." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). A natural parent has due process rights relating to a CINA proceeding. *See In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). The father contends his rights to due process were violated by insufficient notice. Specifically, the CINA petition failed to set forth the acts or omissions regarding the father's failure to exercise reasonable care in supervising the child.

A.

We first address the issue of whether the issue is preserved for our review. The State contends the father failed to preserve error on the issue. As a general rule, parties to a child-welfare proceeding have an obligation to preserve error for appeal, even error of constitutional dimension. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003) (finding parents waived due process challenge because they "did not lodge an objection alerting the juvenile court to their complaints"). This requires presentation of the constitutional question to the district court when the ground or grounds for objection become apparent. *See id.* Additionally, generally, the district court must rule upon the issue raised at some point prior to appeal. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008).

We conclude the father preserved the issue for appeal. The father filed a motion to dismiss prior to the filing of the adjudicatory order. In the motion to dismiss, the father argued the "failure of the petition to include any factual allegations concerning the 'failure to supervise' deprived the father of fair notice of any such allegations against him prior to the adjudicatory hearing" and deprived him of due process under the federal and state constitutions. The juvenile court did not address the motion in the adjudicatory order. Following

entry of the disposition order, the father requested the juvenile court rule on the pending motion. The juvenile court denied the motion on the ground the issues "should have been raised within 15 day[s] of the entry of the adjudication order, but were not." This appears to be a misstatement of the posture of the case. The issue was in fact raised prior to the entry of the adjudication order. While the father should have brought the motion to the attention of the court sooner, *see* Iowa Ct. R. 8.4 ("Any motion filed with the juvenile court shall be promptly brought to the attention of the judge or referee by the moving party."), the father ultimately sought and obtained a ruling on the issue, which is all the father was required to do for error preservation purposes. *See Mitchell*, 757 N.W.2d at 435 (noting that when the district court fails to address a constitutional argument raised by the defendant, the defendant must "file a motion to enlarge the trial court's findings or in any other manner have the district court address th[e] issue").

We disagree with the State's contention that entry of the disposition order renders the matter moot. *Cf. In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order."). The *A.M.H.* case, on which the State relies, is distinguishable from this case. Here, the father timely moved to dismiss the matter prior to the filing of the adjudication order. In *A.M.H.*, the parent raised procedural issues after the fact. *Id.* Also, at issue in *A.M.H.* was the State's alleged failure to comply with certain non-jurisdictional statutory procedures in seeking removal of the child. *Id.* "Notice in child neglect and dependency

proceedings is jurisdictional." *In re Hewitt*, 272 N.W.2d 852, 855 (Iowa 1978) (collecting cases).

Further, because "[t]he parent-child relationship is constitutionally protected," *State v. Iowa Dist. Ct.*, 828 N.W.2d 607, 615 (Iowa 2013), we often bypass our error preservation rules in child welfare proceedings because of the important interests at stake. *See, e.g.*, *In re Q.E.*, No. 14–0783, 2014 WL 3939918, at *5 n.2 (Iowa Ct. App. Aug. 13, 2014); *In re M.B.*, No. 14–0562, 2014 WL 2600364, at *1 (Iowa Ct. App. June 11, 2014); *In re K.C.*, No. 14–0253, 2014 WL 1999187, at *2 (Iowa Ct. App. May 14, 2014). The right of a parent to companionship, care, custody, and management of his or her children has been recognized as far more precious than property rights and more significant and priceless than "liberties which derive merely from shifting economic arrangements." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Even if error were not preserved, we elect to bypass our error preservation rules and proceed to the merits of the father's claims. *See In re S.P.*, 672 N.W.2d 842, 845 (Iowa 2003) (stating the court of appeal was "required" to address a lack-of-notice issue raised by the father for the first time on appeal because it goes to the heart of the district court's jurisdiction; an order entered without notice is void and therefore subject to attack at any time); *see also State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) (bypassing error preservation problem and proceeding to the merits of the issue raised on appeal).

B.

"The State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *In*

*re A.M.*, 856 N.W.2d 365, 376 (Iowa 2014) (internal quotation marks omitted). Nevertheless, the intervention of the State in the family's affairs through initiation of CINA proceedings "'must be accomplished by procedures meeting the requisites of the Due Process Clause.'" *A.M.H.*, 516 N.W.2d at 870 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 37 (1981) (Blackmun, J., dissenting)). "Notice of the hearing and an opportunity to be heard appropriate to the nature of the case is the most rudimentary demand of due process of law in proceedings affecting parental rights to children." *S.P.*, 672 N.W.2d at 845 (internal quotation marks omitted). To allow the parent to prepare for the hearing and defend against the allegations, due process requires "'the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.'" *Hewitt*, 272 N.W.2d at 856 (quoting *In re Gault*, 387 U.S. 1, 32 (1967)).

The petition in this case failed to identify the specific acts or omissions regarding the failure to exercise reasonable care in supervising the child in support of adjudication pursuant to section 232.2(6)(c)(2). Indeed, it would be fair to state the petition in this case did not identify any acts or omissions regarding the failure to exercise reasonable care in supervising the child. The face of the petition sets forth only the statutory text without identifying any conduct at issue. "A bare recital of the conclusionary words of the statute does not suffice as notice." *In re Jeremy C.*, 167 Cal. Rptr. 283, 292 (Cal. Ct. App. 1980) (reversing judgment and remanding "to the trial court to either dismiss the

petition or to require the filing of a new amended petition which sets forth specific allegations of alleged neglect and abuse").

The exhibit attached to the petition—and incorporated by reference to the same—failed to remedy the defect. *Cf. In re Hochmuth*, 251 N.W.2d 484, 488-89 (Iowa 1977) (holding the challenged statute was not impermissibly vague "as applied" where the necessary conditions to avoid termination of parental rights were communicated and explained to both verbally and in writing). The exhibit discusses the child's mental-health conditions and behaviors and contains a conclusion the conditions and behaviors were caused by the father. Nowhere does the document identify the alleged acts or omissions of the father relating to the State's contention the father failed to exercise a reasonable degree of care in supervising the child. The lack of notice regarding the acts or omissions at issue is demonstrated, to some extent, by the paucity of findings supporting adjudication. In adjudicating the child in need of assistance under section 232.2(6)(c)(2), the juvenile court did not identify any act or omission evidencing the father's failure to supervise the child. Instead, the juvenile court noted the father's attitude regarding domestic abuse and corporal punishment and the father's "cavalier attitude" regarding bicycle jumping. Of note, there is no finding the bicycle jumping actually occurred under the father's supervision. Instead, it appears the incident occurred while under the supervision of the mother. Regardless, the petition fails to identify the conduct at issue.

Despite the lack of specific allegations, the State contends the petition was sufficient because it notified the father of the statute at issue and the time of the hearing. For this proposition, the State relies on *In re D.E.D.*, 476 N.W.2d

737 (Iowa Ct. App. 1991), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33 (Iowa 2010). The State's reliance is misplaced. In that case, the juvenile court allowed the State to amend its petition to terminate parental rights during the hearing on the same to assert a new ground not previously pleaded. *D.E.D.*, 476 N.W.2d at 739. Our court vacated the termination order on the ground the "father had no notice prior to the hearing of the grounds under which termination was decreed." *Id.* at 740. *D.E.D.* is actually analogous to this case, in which the State failed to identify at all any of the factual grounds upon which it was going to rely. In both cases, the parent was unaware of the issues to be litigated. The State's reliance on *D.E.D.* is misplaced for a second reason. *D.E.D.* states "[d]ue process requires sufficient notice," *id.* at 739, but the opinion does not discuss at all the content that must be included in the petition to constitute "sufficient notice." The case thus provides no guidance on the issue before us—the sufficiency of the content in the petition.

The issue of the content that must be included in a petition to comport with due process has been addressed in numerous cases. In *Gault*, the Supreme Court held notice sufficient to meet the standards of due process "must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity." 387 U.S. at 33-34 (internal quotation marks omitted). The Iowa Supreme Court reiterated the same standard, holding, in a CINA proceeding, the petition must contain "a general statement of the facts relied on to support the petition." *Hewitt*, 272 N.W.2d at 857. A California case is directly on point:

While this is probably the mildest case of child abuse that will come before this court, it is unnecessary for us to determine if the conclusionary allegations of the petition and purported findings were established by a preponderance of evidence as we find reversible error in the form of the petition. The charging allegations of the petition were so deficient as to violate the notice requirements of due process. Though not distinctly raised as an issue in this appeal, the issue is of sufficient significance that this court should and does address it. The point was preserved in the court below when Janet's counsel objected at the detention hearing to the lack of specific factual allegations in the petition. Section 332, subdivision (f) requires "A concise statement of facts, separately stated, to support the conclusion that the minor upon whose behalf the petition is brought is a person within the definition . . . of the (section) under which the proceedings are being instituted." The petition simply recited in the words of section 300, subdivision (d) that "his (Jeremy's) home is an unfit place for him by reason of neglect, cruelty, depravity or physical abuse of either of his parents, or of his guardians or other persons in whose custody or care he is."

Notice of the specific facts upon which removal of a child from parental custody is predicated is fundamental to due process. (*In re Gault* (1967) 387 U.S. 1, 30-31, 87 S. Ct. 1428, 1445-1446, 18 L. Ed. 2d 527, 547-548; *In re Neal D.* (1972) 23 Cal. App. 3d 1045, 1048, 100 Cal. Rptr. 706.) Notice of the specific facts upon which the petition is based is necessary to enable the parties to properly meet the charges. The requirement of specific facts derives from the recognition that "the statutory criterion of improper and ineffective parental care denotes a fairly extreme case. A dominant parental right to custody of the child pervades our law. Thus before (the law) authorizes the drastic step of judicial intervention, some threshold level of deficiency is demanded. Although a home environment may appear deficient when measured by dominant socioeconomic standards, interposition by the powerful arm of the public authorities may lead to worse alternatives.

*In re Raya*, 63 Cal. Rptr. 252, 255 (Cal. Ct. App. 1967).

An Illinois court has also reached the same conclusion we do: regurgitation of the statutory language without specification of the factual allegations violates due process:

In a proceeding to have a parent declared unfit, due process requires that the petition allege that the parent is unfit and set forth

with particularity the specific grounds that serve as the basis for such assertion. (*In re Westland* (1977), 48 Ill. App. 3d 172, 6 Ill. Dec. 331, 362 N.E.2d 1153.) Neither of the necessary allegations were present in the case at bar since the petitions only alleged, in pertinent part, that "said minor is a neglected minor whose environment is injurious to her welfare." The requirements of an assertion of parental unfitness and supporting allegations of the grounds of such unfitness are material and are essential elements of a petition to have parents declared unfit.

*In re B.K.*, 460 N.E.2d 43, 45 (Ill. App. Ct. 1984).

Due process requires notice of the specific facts upon which the State seeks to take action to enable the parent to properly meet the charge. *See In re Christopher C.*, 182 Cal. App. 4th 73, 83 (Cal. Ct. App. 2010) (stating the purpose of petition is to give parents adequate notice of allegations against them); *M.J.S. v. K.E.S.*, 724 S.W.2d 318, 320 (Mo. Ct. App. 1987) ("Furthermore, it is the office of the petition to provide such notice, so that one whose rights are challenged may know what is relied upon as a cause of action in order that he may be prepared at trial to meet the issues raised by the petition."). That basic standard of fairness was not met in this case. We hold the failure to provide the father with notice of the conduct at issue deprived the father of his right to due process as protected by the federal and state constitutions.

## C.

The State argues reversal is not required because the father has not established prejudice resulting from the insufficiency of the CINA petition. The State relies on *In re D.W.*, 385 N.W.2d 570 (Iowa 1986). That case is distinguishable. The claim in *D.W.* was raised as an ineffective-assistance-of-counsel claim requiring the establishment of *Strickland* prejudice. *See D.W.*, 385 N.W.2d at 579. The claim raised here is a direct claim not analyzed under the

*Strickland* standard. Further, "[n]otice in child neglect and dependency proceedings is judisdictional." *Hewitt*, 272 N.W.2d at 855 (collecting cases). "Due to the substantial defects in the notice here and to the importance of notice, jurisdiction did not attach. Prejudice is presumed." *Id.* at 857.

## III.

For the foregoing reasons, we reverse the district court. "Our reversal is without prejudice to the State to file a new petition, to give proper notice, and proceed again." *In re Meyer*, 204 N.W.2d 625, 627 (Iowa 1973).

**REVERSED.**