# IN THE COURT OF APPEALS OF IOWA

No. 19-1658
Filed February 5, 2020

**IN THE INTEREST OF C.W.,**
**Minor Child,**

**J.G., Father,**
 Appellant.
_____

 Appeal from the Iowa District Court for Harrison County, Jennifer A. Benson, District Associate Judge.

 A father appeals the termination of his parental rights to his minor child. **AFFIRMED.**

 Ryan M. Dale, Council Bluffs, for appellant father.

 Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

 Abby Davison of Public Defender's Office, Council Bluffs, attorney and guardian ad litem for minor child.

 Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

A father appeals the termination of his parental rights to his minor child, C.W., born in February 2018. He argues: (1) the juvenile court abused its discretion and violated his due process rights in denying his motions to continue the termination hearing, (2) the court erred "in denying [his] motion for records from the Department of Corrections" (DOC), (3) the court erred in taking judicial notice of a prior child-welfare case as well as two criminal cases, (4) the State provided insufficient evidence to support termination, (5) termination is not in the child's best interests because he loves the child "and there is a closeness there," and (6) the Iowa Department of Human Services (DHS) failed to make reasonable efforts at reunification.[1]

## I.    Background Facts and Proceedings

The father has a long history of substance abuse and engaging in criminal activity. He has been in and out of prison and jail throughout his life, including a fifteen-year stint in federal prison from 1994 through 2009. He has had his parental rights terminated as to three of his other children. The family came to DHS's attention in August 2018 upon concerns for the parents' use of drugs while caring

---

[1] The State moved to strike the father's petition on appeal for failure to comply with appellate rules, namely the twenty-page limit. *See* Iowa R. App. P. 6.201(1)(c). The supreme court granted the motion and directed the father to file an amended petition. The father moved for reconsideration, generally arguing the limitation would prevent him from presenting all of his arguments and would violate due process. The grant of the State's motion to strike was confirmed by a three-justice panel. The panel noted our ability to set the matter for full briefing. *See* Iowa R. App. P. 6.205(1)

In his petition on appeal, the father requests we set the matter for full briefing because "20 pages is not enough to discuss and argue all of these issues." Upon our de novo review, we find the limit to be adequate and deny the request.

for C.W. and domestic violence in the child's presence.  The child was removed from the parents' care and was ultimately placed with the maternal grandfather.  It was later discovered the mother was pregnant with another child.  Investigation revealed a history of domestic violence between the parents.  The father was arrested in September upon two counts of domestic abuse assault, one causing bodily injury and involving strangulation, and the other while displaying a dangerous weapon.  The child was adjudicated a child in need of assistance (CINA).  A protective order was entered prohibiting the father from contact with the mother and child.

By the time of the dispositional hearing in November, the child was placed with the mother in inpatient treatment.  The father had yet to engage in services.  By January 2019, the mother was bedridden in a hospital due to complications with her pregnancy.  The maternal grandfather took over caring for the child.  The same month, the father pled guilty to one count of domestic abuse assault and was sentenced to probation.  The mother gave birth to the new baby in March.  By the time of the review hearing the same month, the father still had not begun to meaningfully participate in services.  Around the time of the review hearing, the mother was released from the hospital with her new baby and resumed care of C,W.  In April, however, the mother was diagnosed with cancer and returned to the hospital, where she reported she would remain indefinitely.  The child returned to the care of family members.

In light of the mother's illness, the father reported his desire to begin engaging in services.  By this point, however, DHS had modified its permanency-goal recommendation to termination as to the father.  The father did not follow

through on his stated desire to engage in services. Following a permanency hearing, the court directed the State to initiate termination proceedings as to the father. Following the State's termination petition, the court set the matter for trial on June 19. The father was arrested on new charges in May. He remained in jail through the time of the termination trial.

On May 22, the father moved for a continuance of the trial, citing the mother's illness. Thereafter, the mother passed away. On June 4, he filed a motion requesting the court to enter an order directing the DOC to provide him records concerning mental-health and substance-abuse evaluations he allegedly underwent while he was in a residential correctional facility between February and April of 2018. The court set both motions for hearing on June 7. The court denied the motion to continue and the father's request that the DOC be ordered to provide records. As to the records request, the court concluded the records related to before the initiation of the CINA proceeding and, after initiation, the father declined to obtain new evaluations as ordered. The court found no relevance in the stale evaluations.[2]

The father's lack of participation in services continued, after which he requested he be provided services in jail. The matter proceeded to trial as scheduled on June 19. The morning thereof, the father's counsel moved for a continuance. Counsel based the motion on (1) the father recently identifying witnesses, his mother, adult daughter, and "possibly a third witness"; (2) his

---

[2] The telephonic hearing was unreported and a ruling on the motions was not documented at that time. The court stated its reasons for the rulings on the motions during the termination trial and in its termination order, and documented it had ruled during the telephonic hearing.

inability to consult with his client given the venue of the trial; (3) uncertainty concerning the father's "legal situation as far as his criminal charges"; and (4) his desire to file a recent mental-health evaluation and allow the father to undergo a substance-abuse evaluation. All other parties resisted. The court denied the motion.

Thereafter, the father's counsel asked for the county attorney to make a clarification as to her petition for termination, noting the petition alleged termination to be appropriate under Iowa Code section 232.116(1)(f) (2019), which requires proof a child is four years of age or older, and pointing out the child had yet to reach that age. The State moved to amend its petition to allege termination under section 232.116(1)(h), which has a similar elementary makeup to paragraph (f), with the exception of the age of the child and the required duration of removal. The father's counsel responded the amendment would be a "radically different" and "substantial change" that he had not prepared to defend against and renewed his request for a continuance on due process grounds for lack of adequate notice. The court rejected the motion and allowed the amendment.

Thereafter the State requested the court to take judicial notice of a number of court files. Among them were a proceeding in which the father's parental rights were terminated as to another child. The father objected on relevance grounds. The court overruled the objection. The State then requested the court to take judicial notice of the criminal file resulting in the father's January 2019 conviction of domestic abuse assault. The father's relevancy objection was overruled. Finally, the State requested the court to judicially notice a pending felony criminal

case. The father objected on the ground that the matter was "hearsay, it's unproven, and it's not relevant." Again, the court overruled the objection.

The father was unable to complete the presentation of his evidence in the time allotted for the hearing. As a result, the trial was continued until July 24. On the second day of trial, the father's mother and adult daughter testified on his behalf.

The court ultimately terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h). Other than the periods in which the child was in the mother's care during the proceedings, the child has remained in the care of her maternal grandfather, where she is thriving. The child is integrated into the home, and the maternal grandfather is willing and able to adopt. As noted, the father appeals.

## II.　Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.　Analysis

### A.　Denial of Motions to Continue

We review denials of continuance motions for discretionary abuse "and will only reverse if injustice will result to the party desiring the continuance." *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). "Denial of a motion to continue must be unreasonable under the circumstances before we will reverse." *Id.* A finding

of unreasonableness will only surface when the "court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *See State v. Walker*, 935 N.W.2d 874, 877 (Iowa 2019) (citation omitted). Because "nonprejudicial error is never ground for reversal on appeal," reversal is not required if an abuse of discretion occurred but was harmless. *Struve v. Struve*, 930 N.W.2d 368, 378 (Iowa 2019) (citation omitted).

As to the court's denial of his motions to continue the morning of trial, the father argues such was unreasonable for the following reasons:

> The court had an attorney telling it that the attorney needed more time to gather evidence and witnesses on behalf of his client, a completely different ground was being added to the petition on the day of trial, the State was asking for the court to take judicial notice of cases that counsel had not reviewed and did not know anything about . . . , the trial was being held in judge's chambers so counsel could not privately talk to his client, and [the father's] wife had just died.

He also argues his due process rights were violated when the court allowed the State to amend its petition and denied his motion to continue on the ground that he was not prepared to defend against the new allegation.

Long story short, the pouring over of the trial to a second day more than a month later renders any alleged abuse of discretion harmless. The State presented its case on paper. Then the father began his case-in-chief but did not complete it the first day of trial. Over objections by the State and guardian ad litem, the court allowed the father a second day of trial. The father and counsel had more time to compile evidence and ultimately offered the specific evidence they stated their desire to present, testimony from his mother and adult daughter. He certainly had sufficient time to prepare a defense as to the amended statutory ground for

termination, which only minimally differed from the initially alleged ground. As to the judicially-noticed files, while he objected to the files being considered by the court, the father did not request a continuance to review the files. Even if he had, the additional month provided ample time to review the files. His complaint about the venue of the hearing is likewise rejected. The county attorney and court assured counsel and the father privacy would be afforded if necessary. Finally, the father made no request for a continuance on the basis his wife just died. Even if he had, she passed weeks prior, and the pair had discontinued their relationship several months before the hearing. He did note the mother's death was a "game changer," but the additional month of time was likewise sufficient for him to prepare to address that circumstance. At the end of the day, the hearing was continued to a second day, thus allowing the father further time to complete the tasks he complains he was denied the opportunity of completing.

Without deciding whether the court abused its discretion, we conclude if there was any error, it was harmless, as the father was not prejudiced. *See Id.*; *C.W.*, 554 N.W.2d at 281. We thus affirm the juvenile court's denials of the father's motions to continue.

B.     Denial of Motion for Records

Next, the father argues the court erred in denying his motion for records from the DOC. He argues the denial violated his due process rights. We have no record[3] of the constitutional argument being raised or decided below, so error is

---

[3] The hearing on the father's motion for the records was not reported. As the appellant, it was the father's "duty to provide a record on appeal affirmatively disclosing the alleged error relied upon," and we will not speculate as to what went on at the hearing. *In re F.W.S.*, 698 N.W.2d 134, 136 (Iowa 2005).

not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *In re B.E.*, 875 N.W.2d 181, 186 (Iowa Ct. App. 2015) (noting error-preservation obligation applies to constitutional issues). The father's request was essentially a discovery motion.[4] We review rulings on such motions for an abuse of discretion. *In re A.M.*, 856 N.W.2d 365, 370 (Iowa 2014). As noted, an abuse of discretion occurs when the "court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Walker*, 935 N.W.2d at 877 (citation omitted).

In his motion, the father alleged he "received a mental health evaluation and/or a substance abuse evaluation when he resided" in a residential facility between February and April of 2018. He argued the records would be relevant to his defense. The juvenile court disagreed, noting the evaluations allegedly occurred before the initiation of the CINA case and the father refused to obtain new evaluations as ordered. Upon our review, we are unable to say the court exercised its discretion on clearly untenable reasons or to an extent clearly unreasonable. Assuming the evaluations occurred—which is unclear, given his inability to provide any concrete evidence they occurred other than bare allegations—they would have occurred four to six months before the initiation of the CINA proceeding. The existence of the evaluations would not have changed the fact that the father wholly failed to engage in services and obtain new

---

[4] Because the DOC was not a party to the proceeding, we question whether the discovery motion was a proper vehicle to obtain the records. No party raised that issue, and the court resolved the motion on other grounds.

evaluations in light of ongoing concerns regarding his suitability as a parent. We affirm the denial of the father's motion.

C.    Judicial Notice

The father next complains of the juvenile court taking judicial notice of the extraneous court files. He again claims said notice violated his due process rights. Again, the due process claim was not raised or decided below and is thus not preserved. *See Meier v.* 641 N.W.2d at 537; *B.E.,* 875 N.W.2d at 186. He also echoes his argument the files were not relevant. The juvenile court specifically noted it did not consider the two criminal files. As such, taking judicial notice of them was harmless. The court also noted it reviewed the prior termination-of-parental-rights file "for the limited purpose of determining the code sections that [the other child] was adjudicated under." That matter was certainly relevant to the State's allegation termination was appropriate under section 232.116(1)(d). *See* Iowa Rs. Evid. 5.401, .402. In any event, we find no reversible error because we arrive at the same result without resort to the judicially noticed files. *See In re Adkins*, 298 N.W.2d 273, 278 (Iowa 1980).

D.    Sufficiency of the Evidence

The father challenges the sufficiency of the evidence supporting the statutory grounds for termination cited by the juvenile court, Iowa Code section 232.116(1)(e) and (h). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). As to termination under section 232.116(1)(h), the father only challenges the State's establishment of the final element of that provision—that the child could not be returned to his care at the

time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The evidence was clear and convincing the child could not be returned to the father's care at the time of the termination hearing. First, he was incarcerated at the time. The child obviously could not be placed with him in jail. Further, the father has a long history of substance abuse and engaging in criminal activities. He wholly failed to participate in services to remedy the ongoing concerns regarding his suitability as a parent. We find the evidence sufficient.

E.     Best Interests

The father argues termination is not in the child's best interests because he loves the child "and there is a closeness there." The father does not address the factors we consider in determining whether termination is in a child's best interests. Having given "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2), we conclude termination is in the child's best interests. The father has been given ample time to get his affairs in order, and this child's best interests are best served by providing permanency and stability now. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The child is in a relative

placement that is willing to adopt. The child is integrated into this familial setting and is thriving. Continued stability and permanency in this home are in this child's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (Iowa 2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children).

To the extent the father argues for application of the permissive statutory exception to termination contained in section 232.116(3)(c), we find the evidence insufficient to show "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish exception to termination).

F.      Reasonable Efforts

Finally the father argues the State failed to make reasonable efforts at reunification. We bypass the State's error-preservation concern and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999). DHS "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(9). "A child's health and safety shall be the paramount concern in making reasonable efforts." *Id.* § 232.102(12)(a). Our focus is on the services provided and the father's response, not on services he now complains were not provided. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). DHS need only provide those services that are reasonable under the circumstances. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000). Here, the State offered reasonable reunification services. The

father failed to participate in them. Further, a no-contact order was in place, and the juvenile court ordered the father to have no contact with the child until he engaged in services. The father did not do so. The father largely complains he was not allowed visitation. The orders for no contact prevented DHS from allowing visitation. We reject the father's reasonable-efforts challenge.

## IV. Conclusion

We affirm the termination of the father's parental rights.

**AFFIRMED.**