**IN THE COURT OF APPEALS OF IOWA**

No. 21-0306
Filed June 16, 2021

**IN THE INTEREST OF M.B.,**
**Minor Child,**

**T.Z., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A father appeals the juvenile court order terminating his parental rights. **AFFIRMED.**

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant Attorney General, for appellee State.

Samuel K. Earhart, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father appeals the juvenile court order terminating his parental rights. We grant the father's request for a delayed appeal in light of the recent supreme court directive. We determine the juvenile court did not abuse its discretion by denying the father's motion for a continuance. On our de novo review, we find there is clear and convincing evidence in the record to support the termination of the father's parental rights and termination is in the child's best interests. We affirm the decision of the juvenile court.

## I.    Background Facts & Proceedings

T.Z., father, and S.B., mother, are the parents of M.B., born in 2020. The child was removed from the parents' custody shortly after birth because the mother tested positive for methamphetamine and MDMA.[1] The child tested positive for methamphetamine and amphetamines. The mother expressed a desire to have M.B. placed for adoption.[2] The child was initially placed in foster care and then placed with maternal relatives, where the child has remained.

The child was adjudicated to be in need of assistance (CINA).[3] The mother named T.Z. as the father. The father indicated that he was not interested in having contact with the child or participating in services until paternity was established.

---

[1] MDMA is a synthetic drug that alters mood and perception. It is chemically similar to both stimulants and hallucinogens. It is commonly referred to as Ecstasy or Molly. Nat'l Inst. on Drug Abuse (NIDA), *MDMA (Ecstasy/Molly) DrugFacts*, June 2020, https://www.drugabuse.gov/publications/drugfacts/mdma-ecstasymolly.

[2] The mother consented to termination of her parental rights. She does not appeal the termination.

[3] The CINA adjudication as to the mother was filed on June 23, 2020. The CINA adjudication as to the father was filed on August 4.

He participated in one visit on April 6.[4]  He was informed on August 24 that he was the child's biological father.  Even after being informed he was the child's father, the father did not participate in services.  In addition, he did not obtain recommended substance-abuse or mental-health evaluations nor participate in treatment to address these issues.[5]  When requested to participate in a drug test in late January 2021, he told the case manager to "f**k off."  The father also refused to provide an address where he was living.  As such, the Iowa Department of Human Services (DHS) was unable to meet with the father.

On January 13, 2021, the State filed a petition for termination of the parents' rights.  After the petition was filed, the father had two visits with the child.  He did not otherwise participate in any services.  Since the removal, he exercised a total of three visits, which includes the two visits exercised after the filing of the termination petition.

The termination hearing was scheduled for February 2.  The father did not file a financial affidavit until January 26, and counsel was appointed for him that day.  The father's attorney filed a motion for a continuance, stating he had not been able to meet with the father until January 29 and additional time was needed to prepare for the hearing.  The court continued the termination hearing to February 16.

At the beginning of the hearing, counsel for the father stated the father contacted him that morning to relay the father had been living in his car for a few

---

[4] Following M.B.'s birth, the father was escorted from the hospital by security on two occasions as a result of confrontations with the mother.

[5] The father's parental rights were terminated to another child in November 2015.

days, his car was broken down, he was freezing cold, and his phone battery was only charged ten percent. Counsel for the father asked for a continuance. The court ruled the father could testify out of order, and the court allowed the father to be the first witness. The father testified by telephone that he was living in a recreational vehicle and was unemployed. He stated he was unwilling to take a drug test because he did not believe he should be required to do so.

The father completed his direct examination, but during cross-examination, the father stated, "My phone is going to die. Good-bye."[6] The father did not re-connect to the hearing. Counsel for the father asked to continue the proceedings for a second time until the father was able to participate. The court overruled the motion to continue, and the hearing continued.

On February 17, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(b), (e), (g), and (h) (2021). The court found termination of the father's rights is in the child's best interests, noting the father was not in a position to provide the child with the permanency the child needs and deserves. The court determined none of the exceptions to termination found in

---

[6] The father's direct examination was completed prior to disconnecting from the telephonic hearing. The father was contentious during his testimony, even after being instructed on no less than five separate occasions by the court to refrain from using profanity. When asked if he would be clean if a drug test was administered the day of the termination hearing, the father responded,

> Yeah, but what the f**k does that matter. I am not volunteering for shit like that. What did I do wrong? Tell me why I've got to do something wrong to do this. Tell me what I did to make you want to come at me with a drug test. What have I done? Period. Nothing. Not a f**king thing.

When the father continued using expletives, the judge again instructed the father to make a good record for appeal. The father responded to the court, "I can't appeal. I don't even have the f**king kid."

section 232.116(3) should be applied. The father filed a notice of appeal on March 5.

## II. Untimely Appeal

The Iowa Supreme Court filed an order on March 9, 2021, stating the father's notice of appeal appeared to be untimely and ordered that the issue of whether the father should be granted a delayed appeal should be submitted with the instant appeal.

Iowa Rule of Appellate Procedure 6.101(1)(a) provides that a notice of appeal in termination cases must be filed within fifteen days after a final order or judgment. The juvenile court filed the termination order on February 17, and the notice of appeal should have been filed within fifteen days, which would be March 4. The father's appeal was filed one day late, on March 5.

The father acknowledges his notice of appeal was filed beyond the statutory deadline but asserts that the issues he raises on appeal still should be addressed. He states the problem "was partly a result of the delayed notice of counsel to the father due to lack of consistent contact and forms of contact, and partly due to the father's delay in responding to that notice and signing of the notice of appeal." He "argues that dismissing his appeal due to a procedural error that amounted to one day delay, would be inequitable, not in the interest of justice, and not in the best interests of the child."

The Iowa Supreme recently filed two opinions addressing the issue of a delayed appeal in termination of parental rights cases. The court determined a delayed appeal may be granted in termination cases. *In re A.B.*, 957 N.W.2d 280, 290 (Iowa 2021). A delayed appeal is permitted "only where the parent clearly

intended to appeal and the failure to timely perfect the appeal was outside of the parent's control." *Id.* at 292. Also, "an untimely appeal should be allowed to proceed only if the resulting delay is no more than negligible." *Id.* In *A.B.*, the father's attorney took "the blame for not properly calendaring the deadline" due to personal circumstances. *Id.* at 293. The court determined a "two-day delay did not unnecessarily prolong the appeal process." *Id.* The court stated, "We simply cannot let the significant rights at stake be outweighed by the negligible delay involved here." *Id.*

Also, in the case *In re W.M.*, the Iowa Supreme Court granted a delayed appeal to a father when the father's attorney received the notice of appeal form from the father on the deadline for filing the notice of appeal. 957 N.W.2d 305, 316 (Iowa 2021). The notice of appeal was filed two days late. *Id.* at 317. The supreme court concluded the father "clearly intended to timely appeal and the late filing was beyond his control." *Id.* The court noted "[t]he timing did not delay the appeal process," and granted a delayed appeal. *Id.*

We find the father has presented sufficient allegations to show he clearly intended to appeal and the failure to timely file the notice of appeal was outside his control. *See A.B.*, 957 N.W.2d at 292. Additionally, the delay here was negligible. Both *A.B.* and *W.M.* involved delays of two days, and a grant of delayed appeal was determined to be proper because the appeal process had not been delayed. *See id.* at 293; *W.M.*, 957 N.W.2d at 317. We find the one-day delay here "did not unnecessarily prolong the appeal process." *See A.B.*, 957 N.W.2d at 293. We conclude the father should be granted a delayed appeal.

### III.    Standard of Review

Our review of termination proceedings is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  The State must prove its allegations for termination by clear and convincing evidence.  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *Id.*  Our primary concern is the best interests of the child.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

### IV.    Continuance

The father claims the juvenile court should have granted his motion to continue when he was unable to be present for the entire termination hearing.  He also claims the court should have granted his renewed motion to continue after his telephone call was disconnected.

A motion to continue should not be granted unless there is good cause for a continuance.  *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013) (citing Iowa Ct. R. 8.5).  A juvenile court's ruling on a motion for a continuance is reviewed for an abuse of discretion.  *Id.*  "Denial of a motion to continue must be unreasonable under the circumstances before we will reverse."  *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996).

We determine the juvenile court did not abuse its discretion by denying the motion to continue made by the father's counsel.  *See In re K.M.*, No. 16-0778, 2016 WL 4379361, at *2 (Iowa Ct. App. Aug. 17, 2016) (finding no abuse of discretion in the denial of a motion for continuance, although the parent was not present at the time of a CINA hearing).  The hearing was scheduled to be held by

telephone only, so the father's circumstance of having a lack of transportation was not a good cause for a continuance. The father was aware of when the termination hearing would take place but did not prepare by having more than a ten percent charge on his cell phone. Further, the father was able to testify because the court allowed him to testify out of order. The father disconnected the call during cross-examination.

On appeal, the father claims the juvenile court's denial of his motion for a continuance violated his due process rights. The father did not raise his due process claims before the juvenile court. "As a general rule, parties to a child-welfare proceeding have an obligation to preserve error for appeal, even error of constitutional dimension." *In re B.E.*, 875 N.W.2d 181, 186 (Iowa Ct. App. 2015). "This requires presentation of the constitutional question to the district court when the ground or grounds for objection become apparent." *Id.* "Additionally, generally, the district court must rule upon the issue raised at some point prior to appeal." *Id.* We conclude the father's due process claims have not been preserved for our review and we do not address them.

## V. Sufficiency of the Evidence

The father asserts that there is not clear and convincing evidence in the record to support the termination of his parental rights. He states that the child could have been returned to his care at the time of the termination hearing. He claims the evidence shows that he could properly care for the child.

"We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015). "When the juvenile court orders

termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm." *Id.* at 435.

The father's parental rights were terminated under section 232.116(1)(b), (e), (g), and (h). On appeal, however, his only argument pertains to termination under section 232.116(1)(h). Because the father has not raised an argument concerning the termination of his parental rights under section 232.116(1)(b), (e), or (g), he has waived these issues on appeal. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Therefore, we may affirm the termination of the father's rights based on the statutory grounds found in section 232.116(1)(b), (e), and (g). We affirm the father's termination under the unchallenged grounds.

However, even if we elected to address the termination of the father's rights under the sole challenged ground of section 232.116(1)(h),[7] we would find there is clear and convincing evidence in the record to support the termination. The father does not dispute the first three elements of section 232.116(1)(h) were proved. As to the fourth element, whether the child could be safely returned to the parent, the evidence showed the father had been staying in a vehicle for a few days before

---

[7] Section 232.116(1)(h) applies when the court finds that all of the following have occurred:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

the hearing. He had not participated in services designed to promote reunification and refused to participate in drug testing. He failed to take advantage of contact with the child. There is clear and convincing evidence in this record that the child could not be returned to the father at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (noting we consider whether a child can be returned to a parent's care at the time of the termination hearing).

## VI. Best Interests

The father contends termination of his parental rights is not in the child's best interests. He points out that he has exercised two visits with the child since the petition for termination was filed, which he believes went well. The father was receiving unemployment benefits and stated he could financially provide for the child. He testified that he lived in a recreational vehicle that he felt was adequate for the child's needs.

In considering the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.*

We find termination of the father's parental rights is in the child's best interests. The father did not engage in services to improve his parenting skills. He only had three visits with the child. He did not obtain recommended substance-

abuse or mental-health evaluations, nor did he participate in treatment for these problems. The father has not taken the steps necessary to have the child placed in his care. At the time of the termination hearing, the child had been out of parental custody for nearly a year—the child's entire life. In giving primary consideration to the child's safety; to the best placement for furthering the long-term nurturing and growth of M.B.; and to the physical, mental, and emotional condition and needs of M.B.; we conclude termination is in the child's best interest. Accordingly, we affirm the decision of the juvenile court.

**AFFIRMED.**