**IN THE COURT OF APPEALS OF IOWA**

No. 21-1979
Filed March 30, 2022

**IN THE INTEREST OF J.B.,**
**Minor Child,**

**K.B., Mother,**
        Appellant,

**F.B., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Osceola County, David C. Larson,

District Associate Judge.


        A mother and father separately appeal the termination of their parental

rights.  **REVERSED AND REMANDED ON BOTH APPEALS.**


        Elizabeth Elsten, Spirit Lake, for appellant mother.

        Tisha M. Halverson of Klay, Veldhuizen, Bindner, De Jong & Halverson,

P.L.C., Paullina, for appellant father.

        Thomas J. Miller, Attorney General, Chandlor Collins, Assistant Attorney

General, for appellee State.

        Shannon Sandy, Spirit Lake, attorney and guardian ad litem for minor child.


        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**TABOR, Presiding Judge.**

This child-welfare appeal concerns now-three-year-old J.B. His mother and father, Kelli and Forrest, separately contest the termination of their parental rights. Both parents bring similar claims. First, they allege a denial of due process because they were not given notice and an opportunity to be heard at the termination-of-parental-rights hearing. Second, the parents assert a denial of due process because the juvenile court terminated their rights without holding a dispositional hearing. And third, they contend the court erred in terminating their parental rights. Because the parents were not provided proper notice, we vacate the termination order and remand for further proceedings consistent with this opinion.[1]

## I. Facts and Prior Proceedings

This family came to the attention of the Iowa Department of Human Services (DHS) in January 2021. Based on alleged domestic violence by the father and methamphetamine use by both parents, the DHS sought to remove J.B. from his parents' care. A child abuse assessment found a denial of critical care. Because the parents left Iowa with J.B., the DHS did not remove him from their care until February. Since then, J.B. has lived with a foster family in Iowa.

Three months after removal, the juvenile court adjudicated J.B. as a child in need of assistance (CINA) with the parents' agreement. The court scheduled a contested dispositional hearing for July. But on July 6, the court rescheduled that hearing to September 7 at 1:00 p.m.

---

[1] Because the termination order is void, we need not reach the parents' constitutional claims or their arguments on the termination order's merits.

In their petitions on appeal, counsel for both parents assert that they had an agreement with the county attorney that if he filed a termination petition before September, the termination hearing would be set for the same time as the dispositional hearing. The parents' attorneys contend this scheduling arrangement was to ensure that the parents, who lived in Wisconsin, could be present for both hearings.

Indeed, in late July, the county attorney did seek termination of parental rights. The petition alleged that the parents' rights should be terminated under Iowa Code section 232.116(1) (2021), paragraphs (e), (g), and (h). The court then set the termination hearing for the same day as the dispositional hearing (September 7) but scheduled it for 9:30 that morning.[2] And rather than personally serving or mailing notice of the termination proceedings to Kelli, Forrest, and their attorneys, the county attorney served notice through publication in the local newspaper once a week for three straight weeks.

Neither the parents nor their attorneys attended the termination hearing on the morning of September 7. At that hearing, the county attorney and the guardian ad litem (GAL) questioned the DHS case worker and made closing statements in favor of termination. In their petitions on appeal, counsel assert that when the parents appeared for the afternoon dispositional hearing, they learned that the

---

[2] The order setting hearing directed that the petition be served "in accordance with Iowa Code section 232.37." But that section addresses delinquency petitions. Section 232.112 addresses notice and service of termination petitions.

termination trial had occurred without their presence. The court did not hold the dispositional hearing.[3]

Three months later, the court terminated their parental rights on all grounds alleged in the petition. Both Kelli and Forrest appeal, alleging due process violations and contesting the merits of the termination order.

The State declined to file a response on appeal, noting it supported termination in the juvenile court. But in a statement to the court, the Iowa Attorney General's office expressed "concern" about the parents' due process rights and stated it was "unclear if the Parents' Due Process rights were properly upheld."

## II. Scope and Standards of Review

We review termination-of-parental-rights proceedings de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). When considering constitutional claims like deprivation of due process, we also review de novo. *Id.* But we review issues of statutory interpretation for correction of errors at law. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

---

[3] In a September 7 order continuing the dispositional hearing on the GAL's motion, the court stated that Kelli and Forrest were "unable to make it" to the afternoon hearing. That order also reset the dispositional hearing for October 5. Later, at the request of Kelli's attorney, the court continued the hearing again until November 2. As the parties waited on the court's termination ruling, the court continued the hearing until December 7 and then until January 2022. About an hour after the December continuance order, the court issued its order terminating parental rights. The parents did not raise the lack of notice until this appeal. But the State does not contest error preservation. And we elect to bypass any error preservation problem and reach the merits of the parents' due process claim. *See In re B.E.*, 875 N.W.2d 181, 187 (Iowa Ct. App. 2015).

**III. Analysis**

Due process forms the "cornerstone" of the parents' appeals. *See M.D.*, 921 N.W.2d at 232. "Biological parents have a due process right to notice and a hearing before termination of their parental rights may occur." *J.C.*, 857 N.W.2d at 506.

J.B.'s parents raise two due process claims: (1) the State violated their due process rights by failing to provide proper notice of the termination proceedings; and (2) the juvenile court violated their due process rights by proceeding to the termination trial without first holding a dispositional hearing. Because we grant relief on the notice challenge, we need not reach the parents' second claim.

On appeal, the parents invoke both the federal and state due process clauses. The Fourteenth Amendment protects individuals from any State action depriving them of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Iowa Constitution provides the same. Iowa Const. art. 1, § 9 ("[N]o person shall be deprived of life, liberty, or property, without due process of law.); *see also In re C.M.*, 652 N.W.2d 204, 211 (Iowa 2002) ("We have generally interpreted our Due Process Clause to be identical in scope, import, and purpose to the federal clause."). As for substantive due process, a parent's interest in the care, custody, and control of their child is "perhaps the oldest of the fundamental liberty interests recognized" by the United States. *Santi v. Santi*, 633 N.W.2d 312, 317 (Iowa 2001) (citation omitted). As for procedural due process, parents must have "notice and a meaningful opportunity to be heard." *In re K.M.*, 653 N.W.2d 602, 607 (Iowa 2002). On top of their constitutional claims, the parents contend that the State violated Iowa Code section 232.112.

When providing notice of a termination hearing, the State must satisfy the mandates of section 232.112, as well as due process. *In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003). Because we find the State failed to meet the statutory-notice requirement, we need not consider the broader constitutional questions. *See id.*

At the beginning of the termination trial, the juvenile court observed that the parents were not present despite having been "served with Notice by Publication." In its termination order, the court noted that proof of service had been filed in the related CINA case file. In their petitions on appeal, the parents contend that service of notice by publication violated their rights.

To determine whether service was proper, we look to section 232.112. It provides that parents "are entitled to notice and opportunity to be heard, except that notice may be dispensed with in the case of any such person whose names or whereabouts the court determines is unknown and cannot be ascertained by reasonably diligent search." Iowa Code § 232.112(1). It also requires notice to be "sent by restricted certified mail, or sent by electronic mail or other electronic means with the consent of the party to be served, whichever is determined by the court to be the most effective means of notification." *Id.* § 232.112(3).

To determine reasonable diligence, we measure the quantity and quality of the search and whether it was "an inquiry that a reasonable person would make." *S.P.*, 672 N.W.2d at 846–47 (citing *Qualley v. State Fed. Sav. & Loan*, 487 N.W.2d 353, 355 (Iowa Ct. App. 1992)). We look at "the attempts made to locate the missing person" and whether they extended "to places where information is likely to be obtained and to persons who . . . would be likely to have information of the person or entity sought." *Id.* at 846. The State fails this test.

Indeed, the State offered no evidence of its efforts to locate the parents. And we believe the juvenile court was remiss in holding the hearing without that evidence. The record also contains no proof that the parents—or their attorneys— knew the time of the termination hearing. *See In re M.S.B.*, No. 11-1944, 2012 WL 300400, at *1 (Iowa Ct. App. Feb. 1, 2012) (holding the State failed to make reasonably diligent efforts because there was no indication the parents knew about the proceedings).

In fact, the State ignored potential avenues that a reasonable person, under the circumstances, would have explored. *See S.P.*, 672 N.W.2d at 847. First, in early February, the father asked for appointment of counsel, and in doing so, provided his Wisconsin address. Second, the father entered a written guilty plea to domestic abuse in Osceola County, where the termination hearing was to take place. Third, a DHS social worker had a phone call with the mother in August about a potential surgery for J.B. Fourth, the parents had a video-conference call with J.B. just two weeks before the hearing. Lastly, Iowa officials knew that both parents lived in Wisconsin and communicated with the Wisconsin DHS about the parents' situation. Leaving all these avenues untraversed, the State failed to conduct a reasonably diligent search for the parents' location.

Because the State did not satisfy the requirements of section 232.112(1), the parents were denied an opportunity to be heard. *See id.* at 848. Because the juvenile court entered its termination order without the parents having proper notice or the chance to be heard, it is void. We have no choice but to vacate the order and remand for further proceedings. *See id.*

Because we declare the termination order void, we need not decide if holding the termination hearing before the dispositional hearing was a separate due process violation. We trust that the juvenile court will hold a dispositional hearing in the CINA adjudication after our remand in this case, and before any new termination-of-parental rights proceeding.

To recap, we vacate the termination order and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED ON BOTH APPEALS.**